601 So.2d 403 (1992)
Willie Joe KNIGHT
v.
STATE of Mississippi.
No. 90-KA-298.
Supreme Court of Mississippi.
June 3, 1992.
*404 William B. Sullivan, Laurel, for appellant.
Michael C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
BANKS, Justice, for the Court:
Willie Knight was indicted and convicted for leaving the scene of an accident, sentenced to a term of one (1) year in the custody of the Jones County Jail, and ordered to pay a fine of $1,000.00 and court costs. Finding that the circuit court erroneously excluded evidence and denied a defense instruction with respect to Knight's justification for leaving when he did, we reverse.

I.
On the night of August 25, 1989, Willie Knight was driving down a narrow street when he noticed children playing along the side of the road. As Knight proceeded, he suddenly heard what he assumed was a box or garbage can become lodged underneath his automobile. Stopping the car, Knight looked beneath the automobile to see if something was indeed lodged under his car. Finding nothing, Willie Knight proceeded further down the street, until stopped by the shouts of a neighbor, John Vale. Vale had heard Knight's car strike what he assumed was a box or garbage can. In fact, five year-old Jeffery Logan had ridden his "Big Wheel" toy into the path of Knight's vehicle. Vale stated that he paid no attention to the incident, until he heard a neighbor scream that little Jeffrey was trapped under Knight's vehicle. Vale said that he ran after Willie Knight's car and yelled for him to stop. He stated that he told Knight that a child was trapped underneath his automobile. Knight replied, however, that he had already stopped and looked, and that it was probably just a box. John Vale discovered the severely injured child under the front bumper of Willie Knight's Mercury Marquis.
As a crowd of onlookers approached, including the child's father, Knight stated that he became scared and left the scene on foot, after an unknown neighbor advised him that he had better "get away from here." An objection to this testimony was sustained, and further attempts to develop Knight's testimony concerning the circumstances present, which motivated his fear, were thwarted. Knight did testify that he left the scene of the accident after the child's father was already rendering aid to him. John Vale, however, testified that Knight left before aid was rendered to Jeffrey. This is the only real conflict in the evidence.
Willie Knight urges several errors on appeal. We find them all to be without merit except those surrounding the cause for his flight. The only questions are (1) what is the level of proof necessary to create a jury issue on the defense of necessity to the crime of leaving the scene of an accident; (2) is sufficient proof in the record before us; and (3) if the evidence is insufficient, was that deficiency caused by erroneous evidentiary rulings by the trial court.

II.
The crime for which appellant was indicted and tried is set out in Miss. Code Ann. § 63-3-401 (1972), and provides as follows:

*405 (1) The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 63-3-405. Every such stop shall be made without obstructing traffic more than necessary.
(2) Any person failing to stop or to comply with said requirements under such circumstances shall upon conviction be punished by imprisonment for not less than thirty days nor more than one year, or by fine of not less than $100.00 nor more than $5,000.00, or both such fine and imprisonment.
(3) The commissioner shall revoke the operator's or chauffeur's license of the person so convicted.
The duties required by Miss. Code Ann. § 63-3-405 (1972) are as follows:
The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle ... shall give his name, address and the registration number of the vehicle he is driving and shall, upon request and if available, exhibit his operator's or chauffeur's license to the person struck... . Said driver shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person... .

III.
This court has apparently not addressed the question whether, or what, circumstances inducing reasonable fear for one's safety create a viable defense to a crime, including the crime of leaving the scene of an accident. This defense of "necessity" has been addressed by a number of our sister states. See, e.g., Isom v. State, 37 Ala.App. 416, 69 So.2d 716 (1954); Huber v. Casper, 727 P.2d 1002 (Wy. 1986) and cases cited therein; Oregon v. Burris, 10 Or. App. 297, 500 P.2d 265 (1972); People v. Santangelo, 134 Misc.2d 615, 512 N.Y.S.2d 288 (1988). These cases and others recognize the proposition that where a person reasonably believes that he is in danger of physical harm he may be excused for some conduct which ordinarily would be criminal. See, State v. Goff, 79 S.D. 138, 109 N.W.2d 256 (1961). We join our sister states in the recognition of the doctrine today.
Knight relies on the Isom case from our neighbor Alabama. There, as in the instant case, a racial dimension was involved. In Isom a black motorist was involved in an accident with a white motorist. After the exchange of a few words, wherein the black motorist denied striking the white motorist's car, the white motorist was reported to have said "I will kill you" and headed for his car whereupon the black motorist, still in his car, took off. The state makes much of the fact that there, unlike the instant case, there was evidence of an overt threat. The question is not, however, whether an explicit threat was made, but whether a reasonable person under all of the circumstances would feel threatened for his personal safety.

IV.
Turning to the question of what was in this record here creating a factual issue for the jury, a review of all of the evidence in the light most favorable to Knight is in order. Anderson v. State, 571 So.2d 961, 964 (Miss. 1990). Knight, driving through a residential neighborhood with people outdoors, struck what to him, at the time, was an unknown object. He immediately stopped to investigate and saw nothing. As he proceeded on his way, a person in the neighborhood yelled to another that a child was lodged under the car. The neighbor, John Vale, was able to whistle and run and stop Knight.
Knight and Vale knew each other and called each other by name. Knight again got out of his car and the child was discovered. Knight testified that he immediately *406 and repeatedly yelled, to no one in particular, to call an ambulance and that in short order the child's father was there and bending over him rendering assistance. Knight testified that a crowd of "white peoples" began to gather, and he felt unsafe. Knight is a 48 year old black man. Knight stated that at some point the father began to approach him and attempted to testify that, at about that time, a woman bystander said "Boy, you better get out of here." The prosecutor's objection to that evidence was sustained, as were objections to other attempts by Knight to elucidate the circumstances inducing his fear. More about that below. In any event, Knight testified that he ran because he was in fear for his own safety.
At the time, again accepting Knight's testimony, the injured child was already receiving assistance. Knight's identity was known by Vale. His car, registered to him at his address, was left at the scene. The purposes of the statute, rendering assistance to the injured and identifying the persons involved, were not frustrated by Knight's flight.
It is not for us to determine whether he was reasonable in fleeing under the circumstances. We are compelled to determine only whether a fair-minded jury could find that Knight was afraid, that fear motivated his action and that there were present circumstances which could induce that fear in a reasonable person in Knight's situation. We answer this question positively. Indeed, the only way that one could conclude that there was insufficient evidence to support the instruction offered is to consider the message from the unidentified bystander as not being before the jury for consideration. This leads naturally to an assessment of the trial court's evidentiary rulings.

V.
Each time Knight offered the testimony as to what the bystander said to him, an objection was sustained. The ground was hearsay. Whatever may be said as to whether this evidence having been heard by the jury was before it[1]; clearly, the court having sustained the objection did not consider this evidence in determining whether there was sufficient basis for the defense instruction. Just as apparent, the court erred in sustaining the objection to this evidence. The statement in question is both not hearsay and hearsay which is admissible as an exception.
This is not double talk. The statement was or could have been offered for two different purposes. The first purpose of this statement is for its effect on Knight, to show that it induced or contributed to his fear. Offered for that purpose it is not hearsay. "`Hearsay' is a statement, other than one made by the declarant ... offered in evidence to prove the truth of the matter asserted." M.R.E. Rule 801(c). (Emphasis supplied). This statement, when offered for its effect on Knight, is not offered "to prove the truth of the matter asserted." Rather it is offered for the fact that it was said. It does not fit the definition of hearsay.
The statement does have another dimension. It can be read (or heard) to express an opinion concerning the nature of the situation in which Knight found himself. For hearsay purposes it is an exception under Rule 803(1) MRE, a present sense impression. It is, of course, also an opinion that there was danger. Such an opinion would be admissible under Rule 701 MRE.
In any event whether admitted with a limiting instruction as non-hearsay or admitted for all purposes, the statement was admissible. The circuit court erred in sustaining the objections. That did not end the error.
Knight sought repeatedly to explain why he felt fearful. Perhaps, if allowed, he would have described the situation in greater detail. How many people were there? What was the look on the father's face? On the other faces? What was the tone of the voice of the woman urging flight? What emotions did she display? In other *407 words, there is infinite detail concerning this situation which bears on the rationality of Knight's fear under the circumstances. This testimony would have been relevant and admissible. The prosecutor objected to the woman's statement as hearsay and the further questions as leading and repetitious.
The following exchange occurred during the direct examination of Knight:
Q. And what happened next, after that?
A. Well, when I ran 
Q.  now what? You ran?
A. Yes, sir I ran on off.
Q. And tell the jury why you ran?
A. Because I got frightened of what I looked and seen, and then his father was there and some more white peoples, and there was another lady that had come out, and so after everybody went out there is when the lady came to the car and said, "Son, you had better run " MR. COLLINS:  I am going to object again, Your Honor and ask you to instruct him not to say what 
THE COURT:  sustained. Don't tell what somebody else said to you at the time.
A. All right.
Q. Were you running to try to conceal your identity, or were you running for your safety, or why were you running? MR. WINDHAM: We object to his leading, if the Court please.
A. I was running 
MR. COLLINS:  hold on, now.
THE COURT: Just a minute, I will let him answer. Go ahead.
A. I was running for my safety right then.
Q. And what had you seen and observed out there that  what was it about the situation that made you fear for you immediate safety.
MR. COLLINS: Now, Judge, we are going to object to Mr. Sullivan leading. He is leading and suggesting answers to him in the questions, and we object to it.
It is repetitious also. He has already told what he saw and why he left.
THE COURT: Sustained.
Q. Why were you afraid.
MR. COLLINS: Same objection. It's repetitious.
THE COURT: Sustained.
At least one of the questions was not leading and the testimony may not have been repetitious.
It is suggested that no proffer was made. This is so. We have no way of knowing whether Knight would have supplied details helpful to his cause. Knight can, therefore, claim no relief for the erroneous rulings preventing further description. The testimony concerning the woman's statement was improperly excluded. When that testimony is considered in light of the other circumstances the proffered instruction should have been given.

VI.
For the foregoing reasons we reverse and remand this matter to the circuit court.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and PITTMAN, JJ., concur.
McRAE, J., dissents.
NOTES
[1] There was no instruction to the jury to disregard this evidence.