# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CA-01092-SCT

*BEVERLY McMILLAN*

*v.*

*CITY OF JACKSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/21/95 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BRUCE W. GREEN |
| | STEPHEN M. CRAMPTON |
| ATTORNEYS FOR APPELLEE: | MICHELE PURVIS |
| | MARK E. McLEOD |
| NATURE OF THE CASE: | CIVIL - TORTS (OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE) |
| DISPOSITION: | AFFIRMED - 10/23/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/13/97 |

**BEFORE SULLIVAN, P.J., PITTMAN AND BANKS, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. Today, we are asked to determine whether the necessity defense is effective against the charge of trespass on the premises of an abortion clinic where the allegation is that the trespasser claims no knowledge of a specific impending act of legal harm to a person. We answer in the negative. Abortions can be lawful medical procedures, therefore, the requisite legal harm does not exist to justify criminal trespass. Thus, we affirm the decision of the circuit court.

### I.

¶2. On July 17, 1993, Beverly McMillan participated in an abortion protest at the Mississippi Women's Medical Clinic in Jackson Mississippi. McMillan was charged with trespass on the premises pursuant to Miss. Code Ann. § 97-17-97 (1994). On February 18, 1994, before the County Court of the First Judicial District of Hinds County, counsel representing McMillan stipulated that McMillan's conduct did conform to the elements of trespass, but that her actions were justified under the defense of necessity. Counsel outlined the offer of proof that would be submitted in support of the contention that the appellant's actions were within the necessity defense. The issue of whether McMillan could

present the necessity defense was certified by the trial judge to the Supreme Court on interlocutory appeal. On June 9, 1994, the petition for interlocutory appeal was denied.

¶3. On February 10, 1995, the parties again appeared before the County Court of Hinds County where the defendant sought to stipulate and clarify that the defendant did have a defense of justification. Judge C.A. Henley indicated that the entire February 18, 1994, transcript which included the defendant's offer of proof was entered in the record. On April 18, 1995, however, a final judgment was rendered which stated that Beverly McMillan was guilty of trespass. A notice of appeal was filed to the Circuit Court of the Seventh District, Hinds County on April 19, 1995.

¶4. The circuit court issued an opinion and order on September 21, 1995, affirming the conviction for the criminal offense of trespass. An appeal was filed to this Court on September 26, 1995.

## II.

¶5. The appellant does not quarrel with the issue of whether the law was violated. According to the record, an affidavit was submitted by the City of Jackson, Mississippi, which charged Beverly McMillan with wilful and unlawful trespass on the property of the Mississippi Women's Medical Clinic. Miss. Code Ann. § 97-17-97 (1994).[1] While she did break the law, the basic thrust of McMillan's argument is that in light of her knowledge, experience and training as an obstetrician/gynecologist, her conduct was justified to prevent the killing of viable preborn children.

¶6. In support of McMillan's application of the necessity defense, she indicates that the necessity defense is a widely accepted defense that has found favor in Mississippi jurisprudence. We have applied the defense of necessity to justify the use of deadly force in matters of self defense. *Calhoun v. State*, 526 So. 2d 531 (Miss. 1988) (circuit court erred because it refused to grant instruction that self defense may be applicable to a third party.) Also, we have acknowledged that the defense of necessity may justify escape from custody. *Corley v. State*, 536 So. 2d 1314 (Miss. 1988) (although the Court affirmed the defendant's conviction, it outlined how the defense of necessity could be applied lawfully). Moreover, the defense of necessity has been used to justify leaving the scene of an accident. *Knight v. State*, 601 So. 2d 403 (Miss. 1992). The application of the necessity defense in these cases share the finding of a reasonable belief that imminent danger of death or serious bodily harm induced the criminal conduct. These cases are distinguishable from the circumstances that led to McMillan's trespass because she had no knowledge that a specific harm was imminent to justify her unlawful action.

¶7. The Kansas Supreme Court has noted that courts have invoked several different rationales in rejecting application of the defense in circumstances similar to the present case. "The majority of courts reason that because abortion is a lawful, constitutionally protected act, it is not a legally recognized harm which can justify illegal conduct." *City of Wichita v. Tilson*, 855 P.2d 911, 915 (Kan. 1993). Likewise in *Hill v. State*, 688 So. 2d 901 (Fla. 1996), a defendant was charged with first degree murder after killing an abortion clinic physician and volunteer. The defendant sought to present the necessity defense at trial but the State filed a motion in limine to preclude Hill from presenting the defense. *Id*. at 902. The court noted that in every appellate court found to have considered the issue, the defendants were precluded as a matter of law from asserting necessity or justification as a defense to trespass violations committed in protest of abortions. *Id.* at 905-06 & n.5 (citing numerous cases from other jurisdictions). Accordingly, the court found that ". . . as a matter

of law, legal abortion is not a recognized harm and cannot be used to invoke the necessity defense." *Id.* at 906.

¶8. In *Cleveland v. Municipality of Anchorage*, 631 P.2d 1073 (Alaska 1981), the defendants were charged with violation of an Anchorage city criminal trespass ordinance after they handcuffed themselves to an abortion clinic and were physically removed from the clinic. The defendants asserted the necessity defense as a justification for their action. The defendants argued before the Alaska Supreme Court that ". . . in attempting to prevent the performance of abortions at the Alaska Clinic, they acted in the reasonable belief that their actions were necessary to protect human life from imminent peril." *Id.* at 1077. That court disagreed and affirmed the convictions. The court noted that the defense of necessity has three essential elements: (1) the act charged must have been done to prevent a significant evil; (2) there must have been no adequate alternative; and (3) the harm caused must not have been disproportionate to the harm avoided. *Id.* at 1078. The court found that the harm sought to be avoided, namely the abortions that the defendants sought to prevent, was not unlawful and thus did not fall within the defense. *Id.* at 1079.

¶9. Utilizing the same basic test, along with the requirement in our case law that the threatened harm be specific and imminent, we conclude that the instant appeal cannot succeed. McMillan argues that her offer of proof would have shown that her trespass on the premises of the abortion clinic was within the reach of the necessity defense because there was imminent danger to human life and no legal alternative existed at the time the criminal statute was violated. However, the offer of proof which McMillan discussed before the County Court of Hinds County on February 18, 1994, provides no direct evidence or circumstantial evidence sufficient to justify McMillan's actions under the necessity defense. McMillan's claim that 22nd-week abortions are routinely conducted at the clinic, at best, amounts to no more than her suspicion that illegal abortions were being conducted at the clinic. Besides McMillan's own suspicions, the offer of proof includes nothing which proves that any illegal harm was afoot at the clinic. Even if illegal abortions were routinely taking place at the clinic, there is nothing which establishes that an illegal abortion was underway at the time of McMillan's trespass.

¶10. The United States Supreme Court has indicated that from and after the end of the first trimester of pregnancy, a state may regulate the abortion procedure to preserve and protect the life of the mother. *Roe v. Wade*, 410 U.S. 113 (1973). However, simply because an abortion occurs in the second trimester does not mean that the abortion is illegal. Thus, we conclude that the necessity defense does not apply in this case because McMillan does not suggest evidence that she was attempting to prevent a specific and imminent legal harm.[(2)]

¶11. According to McMillan, "[i]t was reasonable, as well, based on the past experiences in Jackson, Mississippi, to believe that the harm to those preborn children was imminent and that no reasonable legal alternatives were available to save those children then and there." McMillan claims to be very experienced and familiar with the routine at the abortion clinic. If this is true, McMillan could have sought an injunction to prevent any unlawful action at the clinic in advance of the date McMillan was compelled to trespass. Clearly, this would have been a better alternative than violating the law.

¶12. Finally, the *Cleveland* Court found that the harm caused by the trespass into the clinic was foreseeably substantial in comparison to the harm sought to be avoided. *Cleveland,* 631 P. 2d at 1081. The record does not indicate the specific circumstances surrounding McMillan's trespass on the

Mississippi Women's Medical Clinic; however, it is foreseeable that impermissible trespass on premises where medical procedures are performed may be problematic for medical providers and patients who are providing lawful services. McMillan claims that her presence at abortion clinics has often caused women to reexamine their decision and decide against abortion. It is foreseeable, however, that McMillan's trespass might have the opposite effect causing a difficult event in the life of a woman to become worse. Thus, given that no legal harm was shown to be imminent, the harm caused by McMillan could have been disproportionate to the harm sought to be avoided.

¶13. McMillan strongly argues that this Court's holding in *O'Bryant v. State*, 530 So. 2d 129 (Miss. 1988) demands that she be permitted to present the necessity defense. In *O'Bryant*, this Court observed:

> It is, of course, an absolute right of an accused to have every lawful defense he asserts, even though based upon meager evidence and highly unlikely, to be submitted as a factual issue to be determined by the jury under proper instruction of the court. This Court will never permit an accused to be denied the fundamental right.

*Id.* at 133.

¶14. The evidence proffered here regarding a specific and imminent legal harm and that concerning the lack of an adequate alternative is less than meager; it is non-existent. A trial court need not consider a defense which is not supported by any evidence. *See e.g., Abram v. State,* 606 So. 2d 1015, 1035 (Miss. 1035). Abortion protests and demonstrations are emotionally charged events. The Constitution embraces the right of assembly and free speech. However, when a protest, demonstration, or assembly results in clear violations of the law, we will not accept the necessity defense as a shield for criminal activity. Because such a decision could be the catalyst for lawless demonstrations that might have otherwise remained peaceful, the decision of the trial court is affirmed.

¶15. **AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN AND McRAE, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., ROBERTS AND MILLS, JJ.**

**SMITH, JUSTICE, DISSENTING:**

¶16. The majority's opinion is seriously flawed. Admittedly, *Roe v. Wade* allows abortion as a constitutionally protected right, when such abortion is a "legal" activity. However, the majority fails to note that in the case at bar, Dr. McMillan alleged that "viable" fetuses were being aborted at the Mississippi Women's Clinic, therefore, she attempted to invoke the necessity defense.

¶17. The trial court prohibited this defense by its order granting the State's Motion in Limine. This Court's majority places its stamp of approval on the trial judge's denial of Dr. McMillan's only defense which denied her a fundamental right to have a jury of her peers decide whether her only defense, "necessity," was believable or not. I am thus compelled to dissent.

¶18. The necessity defense is not codified in the state of Mississippi. However, this Court has applied the common law defense of necessity in various settings. See *Calhoun v. State*, 526 So. 2d 531 (Miss. 1988) (stating self-defense instruction applies in protection of others); *Corley v. State*, 536 So. 2d 1314 (Miss. 1988) (applying necessity defense to prison escape); *Knight v. State*, 601 So. 2d 403 (Miss. 1992) (applying necessity defense in fleeing the scene of an accident). Further, in *Knight*, the Court expressly recognized the doctrine of the necessity defense and stated "where a person **reasonably believes** that he is in danger of physical harm he may be excused for some conduct which ordinarily would be criminal." *Id*. at 405 (emphasis added).

¶19. Various versions of the essential elements are stated among the states that have applied the necessity defense. Even though this doctrine has been applied in various settings in Mississippi jurisprudence, the Court has not specifically identified the essential elements. However, in the case sub judice, the majority adopts the Alaska court's version and identifies the three essential elements of the necessity defense as: (1) the act charged must have been done to prevent a legal harm; (2) there must have been no adequate alternative; and (3) the harm caused must not have been disproportionate to the harm avoided. *Cleveland v. Municipality of Anchorage*, 631 P.2d 1073, 1078 (Alaska 1981). The majority holds that the first and second elements are not met in this case.

## ACT CHARGED DONE TO PREVENT A LEGAL HARM

¶20. To meet the requirements of this element McMillan must have shown that the act charged (trespass) was done to prevent a legal harm (illegal activity). The majority states that "[McMillan] did not seek to prevent a legal harm." The majority relies upon *Hill v. State*, 688 So. 2d 901 (Fla. 1996), and the cases cited therein[3] as authority for their decision. In these cases, the defendants' activities were carried out in an effort to prevent "legal" abortions, or to educate women about the effects of "legal" abortion.

¶21. All the courts who have considered this issue have held that the necessity defense is not applicable in abortion protest cases based on either or both of the following premises:

(1) abortion is a constitutionally protected right and a legal activity that cannot be used to justify an illegal activity (such as trespass);

(2) other legal alternatives (door-to-door solicitation, leaflets, advertisements, etc.) are available to accomplish the goal of educating women regarding abortions or persuading women not to have abortions.

¶22. In reaching their decision, the majority accepts the proposition that because abortion is a constitutionally protected right under *Roe v. Wade*, it is a"legal" activity that as a matter of law cannot be a "harm" used to invoke the necessity defense. However, the facts of this case differ considerably from those in the cases relied upon by the majority. In the case *sub judice*, McMillan claims that her efforts were necessary to prevent "illegal" abortions from occurring at that clinic on that particular morning.

¶23. Several of the cases which have held in the same manner as the majority holds today, specifically point out that the defendants made no claim that "illegal" abortions were being performed. *City of*

*Wichita v. Tilson*, 855 P.2d 911, 913 (Kan. 1993) ("There was no evidence introduced, and no claim has been made by the defendant, that the abortions performed by the Clinic were **illegal** or that the Clinic was operating in any illegal manner.") (emphasis added); *State v. Thomas*, 405 S.E.2d 214, 216 (N.C. Ct. App. 1991) ("Since there was no evidence at the defendants' trial that the clinic was performing or about to perform **illegal** abortions, it is implicit that the 'evil' which the defendants sought to avoid by blocking the clinic's entrances was nonexistent.") (emphasis added); *State v. Clowes*, 801 P.2d 789, 791 (Or. 1990) ("Defendants do not assert that the clinic was unlicenced or otherwise failed to comply with any applicable law."); *Erlandson v. State*, 763 S.W.2d 845, 852 (Tex. Ct. App. 1988) ("Nothing in appellants' bills of exception tends to show that the clinic's staff or its patrons were acting other than within the constitutionally recognized principles which permit abortion."). Additionally, in *People v. Archer*, 537 N.Y.S.2d 726 (Rochester City Court 1988), the court allowed the defense of necessity on the condition that the jury found that illegal abortions were being performed.

> *Roe* prohibits the State statutory necessity defense whenever there are intentional interruptions which interfere with the performance of first trimester abortions. . . . Accordingly, the Court will instruct the Jury that the defendants can present and argue the defense of necessity so long as the Jury finds that the [clinic] was about to perform other than first trimester abortions [on the day of the trespass].

*People v. Archer*, 537 N.Y.S.2d 726, 734-35 (Rochester City Ct. 1988).

¶24. Furthermore, in *Commonwealth v. Markum*, 541 A.2d 347 (Pa. Super. Ct. 1988), Judge Tamilia maintains that the necessity defense may apply to late-term abortions and thus appellants should have been allowed to present supporting evidence. He admits that the "proof may not be forthcoming, despite the offer," but that the appellant should have "the opportunity to invoke the justification defense in respect to the viability standard utilized by the clinic and the likelihood that viable fetuses might be aborted." *Commonwealth v. Markum*, 541 A.2d 347, 354-56 (Pa. Super. Ct. 1988) (Tamilia, J., dissenting).

¶25. McMillan's counsel indicated that they had evidence and testimony to show that it was reasonable for McMillan to believe that **viable** fetuses were being aborted at the Mississippi Women's Clinic on the day she trespassed. This information is relevant in determining whether the first element has been met since there is no constitutional right to abort a viable fetus. In *Casey*, the United States Supreme Court noted, "[t]he woman's right to terminate her pregnancy **before** viability is the most central principle of *Roe v. Wade*." *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 871 (1992) (emphasis added). Neither *Roe* nor *Casey* held that any constitutional right to abortion exists once a fetus is viable. *See Roe v. Wade*, 410 U.S. 113 (1973); *Casey*, 505 U.S. 833 (1992). On the contrary, any injury or killing of a viable fetus must carry the presumption of illegality. In fact, a Mississippi statute specifically prohibits the killing of an unborn quick child. *See* Miss. Code Ann. § 97-3-37 (1994).

¶26. Additionally, the State Department of Health is required by law to promulgate and enforce rules, regulations, and standards in relation to abortion facilities. *See* Miss. Code Ann. § 41-75-13 (Supp. 1997). In accordance with this statutory authority, the Department has issued regulations prohibiting the performance of an abortion beyond the sixteenth (16th) week of pregnancy, in an abortion

facility. Minimum Standards of Operation for Abortion Facilities, Mississippi State Department of Health (amd. 1996). Anyone found to be in violation of these regulations is subject to license revocation and if the violation is by "intent, fraud, deceit, unlawful design, willful and/or deliberate misrepresentation, or by careless, negligent or incautious disregard . . . shall constitute a misdemeanor and shall be punishable by a fine not to exceed One Thousand Dollars ($1,000) for each such offense." Miss. Code Ann. § 41-75-26 (1994).

¶27. This Court has declared that "[i]t is, of course, an absolute right of an accused to have every lawful defense he asserts, even though based upon meager evidence and highly unlikely, to be submitted as a factual issue to be determined by a jury under proper instruction of the court." *O'Bryant v. State*, 530 So. 2d 129, 133 (Miss. 1988).

¶28. "This Court will never permit an accused to be denied this fundamental right." *Id*. at 133 (*citing Ward v. State*, 479 So.2d 713 (Miss.1985); *Lancaster v. State*, 472 So.2d 363 (Miss.1985); *Pierce v. State*, 289 So.2d 901 (Miss.1974)). This Court has also identified the only basis on which an accused should be denied instruction on a defense.

> Our familiar rule, of course, provides that whether an issue should be submitted to the jury is determined by whether there is evidence which, if believed by the jury, **could** result in resolution of the issue in favor of the party requesting the instruction. Conversely, only where the evidence is so one-sided that no reasonable juror could find for the requesting party on the issue at hand may the trial court deny an instruction on a material issue.

*Phillips v. State*, 493 So. 2d 350, 353 (Miss. 1986) (emphasis added) (citations omitted). Additionally, "[t]he evidence must be viewed in the light most favorable to the party against whom the motion is made." *Nassar v. Concordia Rod & Gun Club, Inc.*, 682 So.2d 1035, 1042 (Miss. 1996) (quoting *Brown v. Credit Ctr., Inc.*, 444 So.2d 358, 362 (Miss. 1983)).

¶29. McMillan's only defense was that her actions were necessary to prevent illegal abortions. Whether or not illegal abortions were taking place is a question of fact not a matter of law. Thus, in keeping with this Court's previous holdings (ensuring McMillan's absolute right of asserting a lawful defense and viewing the information in the light most favorable to McMillan), McMillan should have been allowed to present her only defense, even if it were meager and highly unlikely, to the jury for a factual determination of whether legal harm existed.

¶30. "The primary purpose of [a motion in limine] is to exclude evidence highly prejudicial to the movant." *Gifford v. Four-County Elec. Power Ass'n*, 615 So.2d 1166, 1171-72 (Miss. 1992). "Before granting a motion in limine, courts must be certain that such action will not unduly restrict opposing party's presentation of its case." *Whittley v. City of Meridian*, 530 So. 2d 1341, 1344 (Miss. 1988) (citation omitted). "The use of a motion in limine against a defendant in a criminal case***is questionable considering the constitutional rights of defendants." *State v. Rein*, 477 N.W.2d 716, 720 (Minn. Ct. App. 1991) (Randall, J., dissenting) (citation omitted).

¶31. The evidence McMillan proposed to present was relevant as to whether or not illegal activity was occurring, which was essential to establish a material element of the necessity defense. Likewise, the testimony McMillan proposed would not have been highly prejudicial to the movant. The prosecution had several methods available to solicit information in support of their position. Direct

examination of clinic employees, cross examination of defense witnesses and jury instructions were available to ensure the prosecution's theory of the case was presented to the jury. However, because the motion in limine was granted McMillan had no method to present her theory of the case to the jury.

¶32. The present case is not analogous to the situations in the cases relied upon by the majority where the defendants were trying to stop a "legal" abortion. In those cases it naturally follows that if the activity they were attempting to prevent is "legal" there is no "imminent harm" as a matter of law. However, where the defendant proposes to present evidence of an "illegal" activity the court cannot say as a matter of law there is no imminent harm. Where evidence of "illegal" activity is proposed, that evidence must be weighed to determine if the defendant has met his burden of proof and offered "sufficient" evidence for a reasonable juror to conclude that the activity is legal or illegal. Whether the evidence is sufficient to establish that an illegal activity was taking place is a question of fact for the jury, not a matter of law to be decided by the court.

## NO ADEQUATE ALTERNATIVE

¶33. The majority also holds that McMillan did not meet the second element since there were other legal alternatives available to her. Specifically, the majority points out that she could have sought an injunction to prevent any unlawful action at the clinic in advance of the date she trespassed. However, this element can only be fully evaluated when the circumstances of each case are presented. Whether legal alternatives are available necessarily depends on the particular set of extenuating circumstances with which the actor is confronted. In this case, McMillan was not given the opportunity to show the extenuating circumstances she faced.

¶34. "[The necessity defense] is available if the accused reasonably believed at the time of acting that the first and second elements were present, even if that belief was mistaken . . ." *Cleveland v. Municipality of Anchorage*, 631 P.2d 1073, 1078 (Alaska 1981). Had McMillan been able to show that a "legal harm" was imminent, she should then be given the opportunity to present evidence to the jury for a factual determination of whether it was reasonable for McMillan to believe no legal alternatives were available. Since the determination of whether legal alternatives were available depends upon the reasonable belief of the defendant under the particular circumstances of each case, this determination is a question of fact for the jury to determine and not a matter of law.

¶35. In conclusion, in granting the city's motion in limine, the trial court determined that no reasonable juror could have believed that McMillan's evidence would show that illegal abortions were being performed. But this determination was made without McMillan being given the opportunity to present the evidence and testimony she claimed to have in support of this contention. The majority concludes that "McMillan's claim that 22nd week abortions are routinely conducted at the clinic, at best, amounts to no more than a suspicion that 22nd week abortions were being conducted at the clinic." However, McMillan was not given the opportunity to present this evidence in spite of counsel's statements that evidence and testimony were available to prove this allegation. If McMillan could have shown that illegal abortions were being performed at the clinic, it would then be up to the jury to decide whether it was reasonable for her to believe that such abortions were taking place on the day she trespassed.

¶36. The majority further states "[e]ven if illegal abortions were routinely taking place at the clinic,

there is nothing to prove that an illegal abortion was underway at the time of McMillan's trespass." However, McMillan was not allowed the opportunity to present the evidence that she claimed would have supported this allegation.

¶37. McMillan should have been given the opportunity to present evidence of "illegal" activity. This should have been presented to the jury for a factual determination of whether it was reasonable for McMillan to believe that she was acting to prevent imminent harm, that she had no adequate alternative and that her actions were not disproportionate to the harm she was attempting to prevent. Allowing McMillan her absolute right to present this evidence would not ensure that her actions would be justified. On the contrary, the prosecution may elicit testimony to support its position through direct and cross examination and through proper jury instructions and may ultimately obtain the conviction. However, when dealing with a possible criminal conviction, this Court should adhere to its previous ruling and ensure the absolute right to present a lawful defense.

¶38. I respectfully dissent.

**LEE, C.J., ROBERTS AND MILLS, JJ., JOIN THIS OPINION.**

1. Miss. Code § 97-17-97 (1994) provides:

(1) If any person or persons shall without authority of law go into or upon or remain in or upon any building, premises or land of another whether and individual, a corporation, partnership, or association, or any part, portion or area thereof, after having been forbidden to do so, either orally or in writing including any sign hereinafter mentioned, by any owner, or lessee, or custodian, or other authorized person, or after having been forbidden to do so by such sign or signs posted on, or in such building, premises or land, or part, or portion, or area thereof, at a place or places where such sign or signs may be reasonably seen, such person or persons shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than five hundred dollars ($500.00) or by confinement in the county jail not exceeding six (6) months, or by both such fine and imprisonment.

2. We do not suggest that in every case where the necessity defense is invoked there must be a legal harm. Certain natural catastrophes, for example, may constitute significant harm justifying criminal trespass, though no cause of action against a particular individual would exist.

3. *United States v. Turner*, 44 F.3d 900 (10th Cir. 1995); *Northeast Women's Ctr., Inc. v. McMonagle*, 868 F.2d 1342 (3d. Cir. 1989); *City of Wichita v. Tilson*, 855 P.2d 911, 916 (Kan. 1993) (listing cases from 19 states and District of Columbia); *State v. Rein*, 477 N.W.2d 716 (Minn. Ct. App. 1991); *City of Missoula v. Asbury*, 873 P.2d 936 (Mont. 1994); *Jones v. City of Tulsa*, 857 P.2d 814 (Okla. Crim. App. 1993); and *State v. Horn*, 377 N.W.2d 176 (Wis. Ct. App. 1985). *Hill v. State*, 688 So. 2d 901, 905 n. 5 (Fla. 1996).