788 So.2d 93 (2001)
James Joseph KING, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00875-COA.
Court of Appeals of Mississippi.
January 23, 2001.
Rehearing Denied April 3, 2001.
Certiorari Denied June 21, 2001.
*94 Jim Davis, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
EN BANC.
THOMAS, J., for the Court:
¶ 1. James Joseph King, Jr. was found guilty by a Harrison County Circuit Court jury of the transfer of a controlled substance. The trial court adjudged King an habitual offender and sentenced him to life imprisonment without the benefit of probation or parole. Aggrieved, King argues on appeal: 1) the trial court erred in granting the State's motion in limine about events subsequent to his arrest; 2) the trial court erred in its instructions to the jury; 3) the trial court erred in overruling his objections to the State's closing argument; and 4) the cumulative effect of the errors committed at trial are cause for reversal. Finding no error, we affirm.

FACTS
¶ 2. On July 22, 1996, Richard Kelly, an undercover agent working for the Harrison County Narcotics Task Force, engaged in a street level narcotic operation to purchase narcotics in the Pass Christian area. Kelly's vehicle was equipped with both audio and video surveillance equipment. After driving through some of the targeted area, Kelly approached the corner of Felitas and North Street located in Pass Christian. He pulled into the parking lot of Lucky's Store. Kelly's vehicle was approached by James King. King said he had not seen Kelly in a while and asked Kelly what he wanted. Kelly responded that he needed a Dove, the street term for a rock of crack cocaine. King motioned to his nephew, Antoine King, and walked over to him. Antoine King dropped the substance and King picked it up and handed it to Kelly. Kelly gave King $20 for what was later determined to be a rock of crack cocaine.
¶ 3. Ricardo Dedeaux, an investigator with the City of Pass Christian, was assigned to the Harrison County Narcotics Task Force. On July 22, 1996, Dedeaux was the case agent. As case agent, Dedeaux supplied Kelly with the buy money and equipped Kelly with the audio transmitter and video recorders. Dedeaux monitored the transaction over the audio transmitter and was able to testify as to the events that occurred that evening.
¶ 4. During cross-examination Dedeaux testified that he had used King as a confidential informant before July 22, 1996. *95 The last time King worked for Dedeaux was the end of June, 1996. Dedeaux acknowledged that he never actually told King that he was no longer working as a confidential informant for the Harrison County Narcotics Task Force. However, according to Dedeaux, prior to his collaboration with King, he instructed King to do nothing by himself without prior communication with Dedeaux. On July 22, 1996, King had not spoken with Dedeaux. To the best of his knowledge, Dedeaux believed that King had never met Kelly prior to July 1996.
¶ 5. King chose not to testify in his defense and did not call any witnesses on his behalf. Believing the State's version of events, the jury found King guilty of the transfer of a controlled substance.

ANALYSIS

I.

WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S MOTION IN LIMINE ABOUT EVENTS SUBSEQUENT TO KING'S ARREST?
¶ 6. On appeal, King argues that his theory of defense was that he was a paid police informant working for the police on July 22, 1996. King wanted his post-arrest work for law enforcement admitted to corroborate his alleged defense. The state moved in limine to prohibit the jury's receipt of any reference to or evidence of King's service as a confidential informant, after his incarceration on the July 22, 1996 charge. The trial court granted the state's motion in limine with the caveat that if King put forth testimony, from either himself or another witness, which corroborated this defense, the information of the police using King after his arrest would be allowed. King did not testify and, therefore, did not allege he thought he was working as a confidential informant during this sale. Neither did any law enforcement officer testify either directly or indirectly that King was working as a confidential informant during the sale. In fact, Officer Dedeaux testified that King was not working as a confidential informant during this sale. Dedeaux further stated that if King had been working as a confidential informant at the time, it would have been with prior law enforcement approval and assistance in the transaction. Such was not the case here. Simply put, King never met the threshold burden of making the post-arrest work relevant.
¶ 7. King argues that a fair minded jury should be presented with all the evidence so they may address the question of whether or under what circumstances a paid police informant, reasonably concerned for the circumstances he finds himself in creates a viable defense of "necessity" to a crime. King cites the case of Knight v. State, 601 So.2d 403 (Miss.1992), in support of this proposition. In Knight, the Court addressed and adopted the defense of "necessity." Id. at 405-06. The Court stated that the defense of necessity is available "where a person reasonably believes that he is in danger of physical harm he may be excused for some conduct which ordinarily would be criminal." Id. at 405. The defense of necessity has been applied to justify the use of deadly force in matters of self-defense, Calhoun v. State, 526 So.2d 531 (Miss.1988), escape from custody, Corley v. State, 536 So.2d 1314 (Miss.1988), and has been used to justify leaving the scene of an accident. Knight, 601 So.2d at 403. "The application of the necessity defense in these cases share the finding of a reasonable belief that imminent danger of death or serious bodily harm induced the criminal conduct." McMillan v. City of Jackson, 701 So.2d *96 1105, 1107 (Miss.1997). It is clear from the application of the necessity defense to the above cited cases that King's case is distinguishable. King was not arguing, in the lower court or here on appeal, that he was in fear of imminent danger, but rather he alleges he believed that he was still working as a confidential informant. However, King introduced no evidence to support said proposition.
¶ 8. Alternatively King argues that the ruling of the trial court denied him his constitutional right to confront the witness who was testifying against him, to "fully cross-examine the witness on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony." Myers v. State, 296 So.2d 695, 700 (Miss.1974). The general pronouncement in Myers is good law but has no bearing on this case.
¶ 9. The question before this Court is whether the motion in limine pertaining to events subsequent to King's arrest was proper. The trial court gave King the opportunity to get the post-arrest evidence admitted, but King failed to produce any relevant evidence of the latter police involvement to support his defense. This Court is in the unique position of knowing what happened when the evidence was admitted at King's first trial which resulted in a mistrial, and when it was not admitted at his second trial which obviously resulted in a conviction. However, to try and conclude that the two trial outcomes were different based solely on the admittance of evidence of King's post-arrest help for law enforcement would be purely speculative. This court notes that King testified at his first trial and put in issue the relevance of his post-arrest help because he explicitly stated that he thought he was working as a confidential informant during this sale. In the second trial, King did not testify, and failed to put forth any evidence in regards to the relevancy of the post-arrest relations. To allow this type of post-arrest information to be admitted to support a defense of a previous crime could have two potentially harmful effects. First, it could lead law enforcement not to use arrested drug defendants in their endeavor to stop drugs out of fear the defendant will throw their help back in the faces of law enforcement at trial. Secondly, if law enforcement officers quit using arrested drug defendants, those very defendants will be denied the benefit of trying to help themselves on their case insofar as obtaining a lighter charge, a dropping of charges and/or a lenient sentence recommendation. Therefore, we hold that the exclusion of the proffered testimony was not an abuse of discretion on the part of the trial court.

II.

WHETHER THE TRIAL COURT ERRED IN ITS INSTRUCTIONS TO THE JURY?
¶ 10. King argues that the trial court erred in not granting his tendered instruction, D-10. The instruction reads as follows:
The Court instructs the jury that before you can convict James Joseph King, Jr. guilty of Transfer of a Controlled SubstanceCocaine, in the date, time and place, you shall first find that the cocaine was owned, paid for, or controlled by: James Joseph King, Jr. That is, as a matter of law, the momentary handling of the cocaine is insufficient to establish actual dominion and control, not a mere passing control. Mere presence of James Joseph King, Jr. does not indicate participation in the purchase, nor does it support an influence that James Joseph King, Jr. exercised actual dominion and control rather that a passing control of the cocaine.

*97 If, beyond a reasonable doubt in this case, you find James Joseph King, Jr. believed knowingly and intentionally that he was working as a confidential informant with officer Rick Dedeaux and Kelly, and was aiding the police in a street level operation, and had not been given official notice he was not working with police, then, he too was acting within the statutory law, and you much find James Joseph King, Jr. not guilty.
¶ 11. King opines that this instruction was vital, as he was doing what he thought Dedeaux wanted him to do, namely to bring buyers and sellers together. His presence and momentary handling of the drug, under the circumstances, does not make him guilty of either the sale or possession of the drug. He cites Berry v. State, 652 So.2d 745 (Miss.1995). The Berry case involved the possession of cocaine and how the State may go about establishing constructive possession by showing evidence that the contraband was under the dominion and control of the defendant. Id. at 750-51. The Berry case is inapplicable, as King was indicted under Mississippi Code Annotated § 41-29-139(a)(1) for the sale or transfer of cocaine.
¶ 12. In the case of Harrell v. State, 755 So.2d 1 (¶¶ 3-4) (Miss.Ct.App.1999), this Court held that the activity by Harrell, after being approached by undercover narcotics agents, of locating a willing seller, taking the agents' money, delivering it to the seller, and bringing the cocaine back to the undercover agents was sufficient participation to be found guilty of the sale of cocaine. "[A]ctive participation in an illegal drug transaction is sufficient to support a conviction of sale of drugs...." Id. at (¶ 4). Therefore, the first paragraph of the above quoted jury instruction was an incorrect statement of the law as it applied to King's situation.
¶ 13. As to the second paragraph of the tendered jury instruction, the State argues that no error occurred as this paragraph was merely cumulative of an instruction which the trial court granted. We agree. This instruction, D-2-A, reads as follows:
If you find from the evidence in this case that the Defendant, on or about July 22, 1996, in the First Judicial District of Harrison County, Mississippi, that he knowingly, intentionally sold or transferred cocaine at a time that said Defendant had lawful authority to do so, from one or more law enforcement officers, in order to aid and assist said law enforcement officer/officers in carrying out an operation, then you, the jury shall find the defendant not guilty of the sale of cocaine on July 22, 1996.
¶ 14. We find that the second paragraph of D-10 was merely cumulative to D-2-A. The trial court did not err by refusing the instruction.

III.

WHETHER THE TRIAL COURT ERRED IN OVERRULING HIS OBJECTIONS TO THE STATE'S CLOSING ARGUMENT?
¶ 15. King argues that the prosecutor referred to King's exercise of his right not to testify in his closing argument. Our Supreme Court has recognized that a direct comment on a defendant's failure to testify is not allowed and constitutes reversible error. Butler v. State, 608 So.2d 314, 318 (Miss.1992). However, in the instant case, the state does not make a direct comment on King's failure to testify. The record shows that the state makes three references to King's lack of evidence but no direct attacks in regards to his failure to take the stand.
*98 ¶ 16. "Trial courts are allowed considerable discretion to determine whether or not the conduct of an attorney in argument is so prejudicial that an objection should be sustained or a new trial granted." Harvey v. State, 666 So.2d 798, 801 (Miss.1995) (citing Edmond v. State, 312 So.2d 702, 705 (Miss.1975)). "The test to make such determination is whether the natural and probable effect of improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by prejudice." Harvey, 666 So.2d at 801 (citing Johnson v. State, 596 So.2d 865, 869 (Miss.1992)). The remarks made by the State in closing attacked King's lack of evidence and not his failure to testify. A conviction will not be reversed due to an improper remark during closing argument unless this Court is convinced that the remark influenced the jury and contributed to the verdict. In the present case, we are not convinced that the comment by the district attorney served to prejudice the jury and influence the verdict. We hold this issue is without merit.

IV.

WHETHER THE CUMULATIVE EFFECT OF THE ERRORS COMMITTED AT TRIAL ARE CAUSE FOR REVERSAL?
¶ 17. King asserts that the errors complained of above contributed to the wrongful verdict in this case. Our Supreme Court in Genry v. State, 735 So.2d 186 (¶ 73) (Miss.1999) addressed the issue of cumulative error with the following language, "This Court may reverse a conviction and sentence based upon the cumulative effect of errors that independently would not require reversal. Jenkins v. State, 607 So.2d 1171, 1183-84 (Miss.1992); Hansen v. State, 592 So.2d 114, 153 (Miss. 1991). However, where `there was no reversible error in any part, so there is no reversible error to the whole.' McFee v. State, 511 So.2d 130, 136 (Miss.1987)." This Court has addressed each of King's claims and we have determined that each alleged error is wholly without merit. Thus, there is no cumulative error that would cause reversal.
¶ 18. THE JUDGMENT OF THE FIRST JUDICIAL DISTRICT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF TRANSFER OF COCAINE AND SENTENCE OF LIFE IMPRISONMENT WITHOUT THE POSSIBILITY OF PROBATION OR PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, IRVING, LEE, MYERS, AND PAYNE, JJ., CONCUR. KING, P. J., DISSENTS WITHOUT WRITTEN OPINION. CHANDLER, J., NOT PARTICIPATING.