856 So.2d 389 (2003)
James Lamar JONES, a/k/a James Jones, Jr., a/k/a James L. Jones, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01307-COA.
Court of Appeals of Mississippi.
March 25, 2003.
Rehearing Denied August 5, 2003.
*391 Daniel Starr Spivey, Canton, Robert Louis Williamson, Brandon, attorneys for appellant.
Office of the Attorney General By Jeffrey A. Klingfuss, attorney for appellee.
Before SOUTHWICK, P.J., LEE and MYERS, JJ.
LEE, J., for the court.

PROCEDURAL HISTORY
¶ 1. James Jones was indicted for murder, armed robbery, and capital murder, and was tried in June 2001 before an Attala County jury. Jones was granted a directed verdict as to the charge of capital murder, but the jury convicted him of murder and armed robbery, and he was sentenced to serve life imprisonment on each count, the sentences to run consecutively. Jones's motion for judgment notwithstanding the verdict or in the alternative a new trial was overruled, and he appeals to this Court raising the following issues: (1) the evidence was insufficient to support the judgment; (2) the appellant's due process rights were violated; (3) the trial court erred in sustaining the State's objection to the appellant's attempt to introduce a written statement into evidence; and (4) the trial court erred in overruling defendant's objections and in denying his motion for mistrial during the closing argument of the State. We review each of these issues and find no merit; thus, we affirm.

FACTS
¶ 2. On or about June 21, 2000, the appellant and four friends went to the home of Calvin Haymon in Kosciusko. Jones knocked on the door and Haymon's girlfriend, Angela Barton, answered the door. Jones asked her for some "weed" at about the time Haymon drove up to the house with Yvonne Ellis. Haymon and Ellis had exited the car and were standing at the rear of the car when one of Jones's friends, Vincent Butler, approached the *392 two and pulled two guns. Jones then approached and demanded money from Ellis and Haymon and told them to get into the car. Shortly thereafter, Yvonne Ellis's brother, Daniel Ellis, drove up, causing Butler to throw his guns at Jones, who was now seated in the driver's seat of the vehicle. Yvonne Ellis took off running and later found out that his brother, Daniel, had been shot. Daniel later died from his wounds. Haymon was also found shot dead later that night on a rural road.

DISCUSSION OF THE ISSUES

I. WAS THE EVIDENCE SUFFICIENT TO SUPPORT THE VERDICT?
¶ 3. Jones first argues that the evidence was not sufficient to support the verdict. We look to our standard of review:
[T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [the defendant's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We reverse when, with respect to an element of the offense charged, the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty.
Muscolino v. State, 803 So.2d 1240(¶ 10) (Miss.Ct.App.2002) (citations omitted). Jones cites inconsistencies in testimony, mainly centering on clothing witnesses recalled him wearing that night and the stature of the person who shot Daniel Ellis. We are mindful of our ability to review factual questions: "The jury must be left to resolve matters regarding the weight and credibility of the evidence.... Once a case is submitted to the fact finder, `any factual disputes are properly resolved by the jury and do not mandate a new trial.'" Stevenson v. State, 733 So.2d 177(¶ 37) (Miss.1998) (citation omitted). In viewing the evidence in a light favorable to the verdict, we are not persuaded that reasonable men could only have found Jones not guilty. Thus, we find no merit to this issue.

II. WERE THE APPELLANT'S DUE PROCESS RIGHTS VIOLATED BY THE IN-COURT IDENTIFICATIONS OF HIM AS THE SHOOTER?
¶ 4. Jones next argues that his due process rights were violated when Angela Barton, Daniel Summerlin and Rochelle George were allowed to make in-court identifications of Jones as the shooter. In Bogan v. State, 754 So.2d 1289(¶ 12) (Miss. Ct.App.2000), the appellant failed to object to the in-court identification, which was fatal for purposes of preserving error for appeal. In the present case, Jones failed to object at trial to Barton's and Summerlin's in-court identifications of him; thus, with regard to these two witnesses, he has failed to preserve this point for appeal.
¶ 5. Regarding Rochelle George, Jones objected just before the prosecutor elicited an identification from George. The judge held a bench conference outside the jury's hearing, then removed the jury for further discussion. George told the judge that she could identify Jones from the preliminary hearing as the same person at the crime scene. George explained that, of the three men at the preliminary hearing who were identified as being at the crime scene, Jones fit the description of the figure she saw do the shooting. Jones argued that George should make her identification from the scene, not from the preliminary hearing. The court sustained the objection and ruled that George could *393 only testify that Jones had the same build as the unidentified person she saw do the shooting.
¶ 6. In the presence of the jury, George did not identify Jones as the shooter. We, therefore, find no merit to Jones's argument that his due process rights were violated due to in-court identification by George.

III. DID THE TRIAL COURT ERR IN SUSTAINING THE STATE'S OBJECTION TO THE APPELLANT'S ATTEMPT TO INTRODUCE ANGELA BARTON'S WRITTEN STATEMENT INTO EVIDENCE?
¶ 7. Next, Jones argues the trial court erred in declining to allow the written statement of Angela Barton, Haymon's girlfriend, to be used to impeach her testimony, which was inconsistent with her prior statement. Concerning evidentiary issues, our standard of review is clear:
Under the Supreme Court's standard of review, the admissibility of evidence rests within the discretion of the trial court. However, this Court must also determine whether the trial court employed the proper legal standards in its fact findings governing evidence admissibility. If in fact the trial court has incorrectly perceived the applicable legal standard in its fact findings, the Court applies a substantially broader standard of review. However, a denial of a substantial right of the defendant must have been affected by the court's evidentiary ruling. Furthermore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs.
Hayes v. State, 803 So.2d 473(¶ 4) (Miss. Ct.App.2001).
¶ 8. On cross-examination, Jones's attorney got Barton to admit that her statement to the police two days after the shooting was inconsistent with the testimony she had just given. Barton explained that the details she gave to the police were based on her own knowledge, but her testimony was based on personal knowledge as well as all the other information she had learned in the year since the shooting.
Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require....
M.R.E. 613(b). The judge ruled that Rule 613 of the Mississippi Rules of Evidence, which allows prior inconsistent statements to be admitted for purposes of impeachment, would not permit Barton's statement to be admitted, since she admitted on the stand that the statement and her testimony differed, but also explained the discrepancy thereby giving no need to impeach.
[W]hen a witness is given an opportunity to admit or deny the making of a statement, as he must be, his refusal to admit or deny making the statement opens the door for impeachment.... When a witness fails in any manner to acknowledge the making of a statement, the impeacher is obligated to offer proof establishing the making of that statement, assuming of course, that the issue is relevant.
Hall v. State, 691 So.2d 415, 421 (Miss. 1997) (citations omitted). In the present case, Barton did not deny making the inconsistent statements. The court found Barton's two statements to be mostly consistent, and concerning those portions that differed, the judge found Barton was provided ample opportunity to explain the inconsistencies in her statement and her *394 testimony. Consequently, there was no reason for the judge to admit the statement, which would be superfluous or extrinsic evidence. The judge properly found that no purpose would be served in admitting the statement which Barton had admitted to giving; thus, we find no merit to this issue.

IV. DID THE TRIAL COURT ERR IN OVERRULING THE APPELLANT'S OBJECTIONS AND IN DENYING THE APPELLANT'S MOTION FOR MISTRIAL DURING THE CLOSING ARGUMENT OF THE STATE?
¶ 9. With his final issue, Jones argues the judge erred in allowing the prosecutor to make improper statements which were prejudicial to Jones. "Whether to grant a motion for mistrial is within the sound discretion of the trial court. The standard of review for denial of a motion for mistrial is abuse of discretion." Caston v. State, 823 So.2d 473(¶ 54) (Miss. 2002).
¶ 10. The following exchange at issue is taken from the transcript of the prosecutor's closing argument:
PROSECUTOR: I beg counsel for the defendant to come up here and submit to you or put some proof on that would impeach or show y'all how Miss George's identification has been impeached. None whatsoever.
DEFENSE COUNSEL: I object to that argument because it places a burden of proof on the defendant, which he does not have.
COURT: Overruled.
After the ruling on the objection, the prosecutor continued with his closing argument. In arguing that the judge improperly overruled his objection, Jones refers us to Wilson v. State, 433 So.2d 1142 (Miss.1983). In Wilson, the supreme court took the opportunity to advise prosecutors statewide that no tolerance would be extended towards the making of improper comments concerning a defendant's failure to testify: "District attorneys must not directly, or by innuendo and insinuation, comment on a defendant's not testifying. Any person competent to be a prosecuting attorney knows that elementary principle of law." Wilson, 433 So.2d at 1146. The objection in the present case did not concern Jones's decision not to testify, but rather concerned Jones's perception that the prosecutor was attempting to shift the burden of proof to Jones to prove that one of the witnesses, Miss George, was lying. Thus, Jones failed to object on the grounds on which he now appeals, and we find this point procedurally barred.
¶ 11. Without waiving the procedural bar, we note that in a similar situation, this Court found no error:
The remarks made by the State in closing attacked [the defendant's] lack of evidence and not his failure to testify. A conviction will not be reversed due to an improper remark during closing argument unless this Court is convinced that the remark influenced the jury and contributed to the verdict. In the present case, we are not convinced that the comment by the district attorney served to prejudice the jury and influence the verdict.
King v. State, 788 So.2d 93(¶ 16) (Miss.Ct. App.2001). The prosecutor's remark here, also, concerned lack of evidence (failure to impeach) rather than Jones's failure to testify. Jones has shown no prejudice resulted from the remark; thus, there is no merit to his argument.
¶ 12. Jones also refers to another alleged improper comment made by the prosecutor:
PROSECUTOR: Ladies and gentlemen, the proof of the Daniel Ellis killing is so *395 overwhelming I don't know what else I can say to you. The armed robbery, Yvonne just told it like it was. You know, Butterball testified they were out there and all of a sudden they were gone. That kind of backs up what Yvonne told you. I submit to you, ladies and gentlemen, that you cannot tolerate the James Jones of the world.
DEFENSE COUNSEL: Object to that argument, Your Honor.
PROSECUTOR: I submit to you
COURT: Overruled.
DEFENSE COUNSEL: And move for a mistrial. It is not about the James Jones of the world. The jury has no duty other than to decide this case. I move for mistrial.
COURT: Motion for mistrial is overruled.
Jones argues that in making his remarks the prosecutor was engaging in personal vilification of Jones and that the prosecutor was asking the jury to make a policy decision rather than asking them to limit their decision to the facts of the case. In rebuttal, the State argues that the statement was merely the conclusion of a litany of the evidence against Jones and that it did not call for the jury to send a message to the community, but rather was a call for the jury to weigh the evidence against this particular defendant.
¶ 13. We recognize that the supreme court has explicitly banned prosecutors from using "send a message" type warnings to jurors when deciding guilt of a defendant. See Wilcher v. State, 697 So.2d 1123, 1139 (Miss.1997). In the present case, the context of the prosecutor's remarks shows that the message he was conveying did not fall under this "send a message" theme. Rather, in concluding his argument the prosecutor summed up the evidence and told the jurors that Jones's specific actions as they transpired in this case should not be tolerated. Thus, we find no error in the judge's decision not to grant the mistrial.
¶ 14. THE JUDGMENT OF THE ATTALA COUNTY CIRCUIT COURT OF CONVICTION ON COUNT I, MURDER AND SENTENCE OF LIFE; COUNT II ARMED ROBBERY AND SENTENCE OF LIFE TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. KING, P.J., CONCURS WITH A SEPARATE WRITTEN OPINION JOINED BY IRVING, J.
KING, P.J., concurring.
¶ 15. I concur with the outcome reached by the majority. However, I write separately to express my disagreement with the majority on issue four.
¶ 16. The majority holds that, when placed in proper context, the prosecutor's remarks were aimed at "Jones's specific actions as they transpired in this case." I disagree.
¶ 17. I have read the entirety of the prosecution's argument, and believe it was intended as a "send a message" statement. Send a message statements have been repeatedly condemned by our supreme court. Payton v. State, 785 So.2d 267(¶ 11) (Miss. 1999); Evans v. State, 725 So.2d 613, 675 (Miss.1997); Chase v. State, 699 So.2d 521, 537 (Miss.1997); Wilcher v. State, 697 So.2d 1123, 1139 (Miss.1997); Wilcher v. State, 697 So.2d 1087, 1112 (Miss.1997); Hunter v. State, 684 So.2d 625, 637 (Miss. *396 1996); Williams v. State, 522 So.2d 201, 209 (Miss.1988).
¶ 18. The "send a message statement" asks the jury in its deliberations to not only consider the evidence against the defendant, but to also consider that there are other persons, who may commit similar offenses and to punish them vicariously by convicting the defendant. Payton, 785 So.2d 267 at (¶¶ 9, 12). By applying his remarks not merely to the defendant, but all of "the James Joneses of the world," the prosecution placed the weight not simply of this case, but all similar cases on the back of James Jones. Payton, 785 So.2d 267 (¶ 8). No matter how you attempt to cover it, the effect is the same. It was a request to the jury to find James Jones guilty, not simply because of his actions, but because of the actions of all "the James Joneses of the world." A defendant should not be convicted because of what someone not associated with him has done, or may do in the future, but should be convicted because the State proves beyond a reasonable doubt that he committed the offense for which he is being tried. Williams v. State, 522 So.2d 201, 209 (Miss.1988).
¶ 19. While believing the majority to be wrong on this issue, I believe there was sufficient evidence of guilt in this instance not to find this to be reversible error.
IRVING, J., JOINS THIS SEPARATE OPINION.