ROBERTS, J.,
for the Court.
SUMMARY OF THE CASE
¶ 1. On July 11, 2005, a jury sitting before the Neshoba County Circuit Court found Wendy Michelle Smith guilty of the sale of dextropropoxyphene, a schedule IV controlled substance. On July 14, 2005, the circuit court sentenced Smith to fifteen years in the custody of the Mississippi Department of Corrections. Post-trial, Smith filed an unsuccessful motion for a *476 new trial. Aggrieved, Smith appeals and raises three issues, listed verbatim:
I. THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE , EVIDENCE. THE COURT ERRED IN REFUSING A PEREMPTORY INSTRUCTION AND IN DENYING THE MOTION FOR A NEW TRIAL.
II. THE COURT ERRED IN OVERRULING APPELLANT’S HEARSAY OBJECTION.
III. THE COURT ERRED IN FAILING TO GRANT APPELLANT’S MOTION FOR A DIRECTED VERDICT BECAUSE THE PROSECUTION FAILED TO PROVE THE IDENTITY OF THE PURCHASER OF THE CONTROLLED SUBSTANCE LAID IN THE INDICTMENT, AND THE INDICTMENT WAS INSUFFICIENT BECAUSE IT FAILED TO IDENTIFY THE PURCHASER OF THE CONTROLLED SUBSTANCE APPELLANT WAS CHARGED WITH SELLING.
Finding no error, we affirm.
FACTS
¶ 2. This case centers on a confidential informant’s illegal purchase of a schedule IV controlled substance. That confidential informant was Chris Nolan. Nolan acted under the direction of Deputy Richard Sis-trunk, drug officer with the Neshoba County Sheriffs Department and an another agent with the Mississippi Bureau of Narcotics.
¶ 3. On Tuesday, December 21, 2004, Nolan called Deputy Sistrunk and informed him that he knew of an opportunity to purchase prescription medication. As a result of that call, Nolan, Deputy Sistrunk, Deputy Grant Myers, and Nolan’s wife conducted a “pre-buy meeting.”[1] During that meeting, Deputy Sistrunk and Deputy Myers searched Nolan, Nolan’s wife, and their car. Deputy Sistrunk gave Nolan money to purchase the prescription medication, placed audio and video recording equipment in Nolan’s vehicle, and placed wireless audio and video recording devices on Nolan.
¶ 4. After the pre-buy meeting, Nolan went to the target location' — a home occupied by Terry Morales Lewis, Jr., Lewis’s mother, and Wendy Michelle Smith, Lewis’s girlfriend. Smith had lived with Lewis for approximately four months at that time. The audio and video recording equipment captured the entire exchange that followed. Deputy Sistrunk and Deputy Myers waited within a quarter-mile of the purchase location and monitored the events to ensure Nolan’s safety.
¶ 5. Lewis and Nolan negotiated an exchange of forty dollars for thirteen Darvo-cet tablets. When Nolan began to give Lewis forty dollars, Smith corrected Nolan. To paraphrase Smith, Smith told Nolan that the Darvoeet prescription belonged to her, so he should pay her the forty dollars rather than Lewis. Nolan complied, gave Smith forty dollars, and left.
¶ 6. Nolan and Deputy Sistrunk immediately conducted a “post-buy meeting.” Deputy Sistrunk collected the audio and video equipment from Nolan. Deputy Sis-trunk also collected the Darvoeet from No *477 lan, sealed the Darvocet in an evidence bag, and later gave that sealed evidence bag to Agent Shelly Boone of the Mississippi Bureau of Narcotics for transportation to the Mississippi Crime Lab for analysis. That analysis confirmed that the Darvocet tablets were, in fact, Darvocet, otherwise known as dextropropoxyphene, a schedule TV controlled substance.
PROCEDURAL HISTORY
¶ 7. On May 2, 2005, the Neshoba County grand jury returned an indictment against Smith. According to that indictment, Smith sold, “to Mississippi Bureau of Narcotics Confidential informant # 224-2004 for the sum of $40.00, a Schedule -IV controlled substance, namely Dextropro-poxyphene, in Neshoba County, Mississippi, contrary to and in violation of Section 41 — 29—139(a)(1), Miss.Code Ann. (1972)[J” On May 4, 2005, Smith executed a waiver of arraignment and pled “not guilty.” On July 11, 2005, Smith went before the circuit court for trial.
¶ 8. The State called six witnesses during its case-in-chief: (1) Deputy Sistrunk, (2) Nolan, (3) Deputy Myers, (4) Agent Boone, (5) Rachel Nolan, and (6) Jamie Johnson, the forensic scientist who performed the chemical analysis on the Dar-vocet tablets. During Nolan’s testimony, the State introduced the videotaped footage of the sale. After the State ceased its case-in-chief, Smith made an unsuccessful motion for a directed verdict.
¶ 9. Smith took the stand in her own defense and presented a defense based on abuse and coercion. That is, Smith testified that Lewis was verbally and physically abusive with her and that Lewis coerced her to sell Darvocet to Nolan. When confronted with the question as to why she did not appear scared on the videotape, Smith explained that Lewis would have physically abused her if she had appeared scared. On cross-examination, Smith testified that she broke up with Lewis approximately one month after she sold Nolan Darvocet. Smith also testified that she could have “probably” left at any time but she was scared to leave.
¶ 10. Smith rested after she testified. The State did not call any rebuttal witnesses. The jury deliberated for fifteen minutes and found Smith guilty. Following her unsuccessful motion for a new trial, Smith appeals.
ANALYSIS
I. THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE. THE COURT ERRED IN REFUSING A PEREMPTORY INSTRUCTION AND IN DENYING THE MOTION FOR A NEW TRIAL.
¶ 11. In this issue, Smith attacks both the sufficiency and weight of the evidence that led to her conviction. Smith claims that the verdict was inappropriate because she sold Darvocet to Nolan at Lewis’s direction. Smith also claims that Lewis would have physically harmed her had she refused to do so. Smith reasons that, as such, the verdict was against the weight and sufficiency of the evidence.
¶ 12. A request for a peremptory instruction challenges the legal sufficiency of the evidence. Jerninghan v. State, 910 So.2d 748(¶ 6) (Miss.Ct.App.2005). When reviewing a circuit court’s decision to deny a request for a peremptory instruction, we accept all evidence favorable to the State as true. Id. That is, we give the State the benefit of all reasonable inferences that can be reasonably drawn from the evidence. Id.
 ¶ 13. Unlike a request for a peremptory instruction, a motion for a new *478 trial challenges the weight of the evidence. Verner v. State, 812 So.2d 1147(¶ 6) (Miss.Ct.App.2002). We may only reverse the circuit court’s decision if the circuit court abused its discretion when it overruled Larson’s motion for a new trial. Smith v. State, 868 So.2d 1048(¶ 11) (Miss.Ct.App.2004).
¶ 14. Smith claims the circuit court should have granted either her request for a peremptory instruction or her motion for new trial because she presented uncontra-dicted testimony that she was in fear of her personal safety when she sold Nolan Darvoeet. True enough, Smith testified that she sold Darvoeet to Nolan and that she did so under Lewis’s direction. Smith also testified that, at times, Lewis had been verbally and physically abusive towards her. In particular, Smith testified that Lewis “beat [her] up” on four occasions. Though Smith could not remember the exact dates, she testified that, if she did not do as she was told, Lewis would hit her. Smith testified that Lewis choked her, hit her with “drum sticks.” Further, Smith testified that on one occasion, Lewis wanted her to sell drugs and, because she did not want to, Lewis “busted the back of [her] head open.” According to Smith, because no testimony contradicted her “coercion” testimony, she was entitled to a peremptory instruction or, failing that, a new trial.
¶ 15. The State presents a curious and disjointed argument. First, the State claims that Smith “failed to make a proper argument of this issue, weight of the evidence, by specifically raising it in her brief, and that it should be rejected for that reason alone.” We are unable to determine the State’s meaning. In any event, the State also argues that “the. lower court cannot be held in error when Hall has failed to present a sufficient record to support his argument.” Obviously, Hall is not the appellant in this case and Smith is a female, so it appears that this argument does not apply to Smith at all. Adding to the confusion, the State suggests that Smith provided neither the necessary transcripts nor an adequate record. There is nothing inadequate about the record and the transcript appears in its entirety. Finally, according to the State’s clearest argument, the State suggests that there existed a jury question on the issue of whether Smith was in duress at the time she sold Darvoeet to Nolan. We agree.
¶ 16. What Smith terms as the defense of “coercion” is more commonly used synonymously with the defenses of “necessity” and “duress.” This particular line of “justification” defenses first entered the vocabulary of Mississippi jurisprudence in 1890, when the Mississippi Supreme Court held that, “an act, criminal in its nature, may be committed by one under such circumstances of coercion as to free him from criminality.” Bain v. State, 67 Miss. 557, 560, 7 So. 408, 409 (1890). The Bain court went on to hold that “[t]he impelling danger, however, should be present, imminent and impending, and not to be avoided.” Id. The Mississippi Supreme Court later recognized that, in a criminal setting, “duress” is an affirmative defense. Powe v. State, 176 Miss. 455, 461, 169 So. 763, 765 (1936).
¶ 17. Since that time, justification defenses under the name “duress” or “necessity” have arisen infrequently. The Mississippi Supreme Court elaborated on the defense of duress in Brown v. State, 252 So.2d 885 (Miss.1971). In Brown, the supreme court repeated the holding in Powe that an accused advancing duress as an affirmative defense must prove that impelling danger was present, imminent, impending, and not to be avoided at the time the crime was committed. Notwithstanding the language from Powe, the supreme *479 court went on to hold, “[i]n the final analysis the most that can be said relative to the appellant’s testimony as to duress is that it presented a question for the jury to determine.” Id. That is, the supreme court found that circumstantial evidence in the form of the appellant’s behavior contradicted the appellant’s claim of duress. Accordingly, the supreme court held that, under such circumstances, a jury question existed as to whether the accused affirmatively demonstrated duress. Id. What is more, the supreme court held that, when such a jury question exists, a guilty verdict is not against the overwhelming weight of the evidence. Id.
¶ 18. In two cases, the Mississippi Supreme Court has recognized the inexact nature of the defenses of “duress” and “necessity.” In Knight v. State, 601 So.2d 403 (Miss.1992), the Mississippi Supreme Court examined the defense of “necessity” and stated that it had not yet “addressed the question [of] whether, or what, circumstances inducing reasonable fear for one’s safety create a viable defense to a crime.” Id. at 405. However, the supreme court did state that, “where a person reasonably believes that he is in danger of physical harm he may be excused for some conduct which ordinarily would be criminal.” Id. In West v. State, 725 So.2d 872, 891(¶ 79) (Miss.1998), the supreme court stated that it:
has not precisely enunciated the elements of a duress defense in this State, although it has expressly adopted the general rule of other states that where a person reasonably believes that he is in danger of physical harm he may be excused for some conduct which ordinarily would be criminal.
¶ 19. The United States Supreme Court recognized the blurred lines between duress and necessity in United States v. Bailey, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). Blurred lines notwithstanding, the Supreme Court held that, “[u]nder any definition of these defenses one principle remains constant: if there was a reasonable, legal alternative to violating the law, “a chance both to refuse to do the criminal act-and also to avoid the threatened harm, the defenses will fail.” Id. at 410, 100 S.Ct. 624 (internal quotes and citations omitted).
¶ 20. Applying the precedent set in Brown, it is clear that where circumstantial evidence contradicts otherwise uncon-tradicted testimony, that contradiction creates a question for jury resolution. During Smith’s direct examination, her own attorney pointed out that, according to the videotaped footage of Nolan’s purchase, Smith did not appear to be frightened or afraid. Smith explained that she did not appear afraid because that very appearance would have earned Lewis’s retribution later. Smith’s explanation notwithstanding, at the very least, the videotaped surveillance footage creates a jury question as to whether Smith reasonably believed she was under imminent threat of physical harm at the moment Smith sold Nolan prescription medication.
¶ 21. Other circumstantial evidence contradicted Smith’s duress claim. When Nolan went to hand his money to Lewis, Smith corrected Nolan and informed Nolan that the Darvocet belonged to her. Smith reasoned that, because the prescription was in her name, she was entitled to the money. Where Nolan had previously intended to pay Lewis, Nolan instead gave his money to Smith. As such, the jury heard evidence that Smith did not appear frightened and that she did not hesitate to state her claim on money that was otherwise going to Lewis. A reasonable juror could conclude that Smith, in effect having taken money otherwise going to Lewis, did not fear retribution for doing so. It is *480 noteworthy that Smith testified that Lewis later took that money from her. Even so, at a minimum, a jury question existed as to whether she was in imminent fear of physical harm at the moment that the exchange occurred.
¶ 22. What is more, Smith testified that, approximately one month after the date of the exchange at issue, she left Lewis. Smith testified that she “finally made [sic] just made my mind up and left any way.” Smith also testified that she could have “probably” left at any time and not have been in danger. Smith’s testimony suggests that she could have left Lewis and avoided physical harm.
¶ 23. Finally, and possibly most harmful to Smith’s duress defense, is her testimony that she voluntarily sold Darvocet to Nolan because she expected to profit from that sale. In particular, when asked whether she voluntarily took part in the sale, the following exchange transpired:
A. I thought I could keep the money, but I couldn’t.
Q. But you—
A. He took it anyway. I should have knew that.
Q. But you thought when you took the money you might get to keep it?
A. Yeah, but I knew I wouldn’t. I never kept no money.
Q. But you did voluntarily participate in this sale, did you not?
A. Yes.
Accordingly, the jury heard evidence that Smith did not appear frightened at the moment of the sale, that she successfully asserted a claim for money otherwise going to the man she claimed placed her in imminent fear of physical harm, that she later left that man without incident and probably could have at any time, and that she voluntarily sold Darvocet because she hoped to profit from it. In all actuality, Smith’s defense was that she feared the potential of physical harm at some point in the future, rather than at the moment the sale occurred. As such, it was certainly within the province of the jury to resolve the issue with a conviction. Accordingly, the circuit court did not err when it declined to grant a peremptory instruction and it did not err when it overruled Smith’s motion for a new trial. Therefore, our standard of review mandates that we affirm.
II. THE COURT ERRED IN OVERRULING APPELLANT’S HEARSAY OBJECTION.
¶ 24. Smith claims that the circuit court improperly admitted hearsay testimony during Deputy Sistrunk’s testimony. In particular, Smith references the following exchange during her attorney’s cross examination of Deputy Sistrunk:
Q. Do you know why it is that Terry Lewis, Jr. also known as Jimmy Morales, Jr. is not being prosecuted in this case?
A. We can’t find him. He has not been arrested.
BY MR. COLLINS: Court’s indulgence for one moment.
Q. Have you checked for him at this very address where the — the sting was held that night?
A. The day that we went and arrested Wendy, we checked for him there. We received information from neighbors that he was living in bars.
BY MR. COLLINS: Your Honor, I object to hearsay evidence.
BY THE COURT: Overruled.
 ¶ 25. We review a circuit court’s decision regarding the admission of evi *481 dence for abuses of discretion. Burton v. State, 875 So.2d 1120(¶ 6) (Miss.Ct.App.2004). In other words, we will not disturb a circuit court’s decision unless it is clearly wrong. Id. We will only find an abuse of discretion if a defendant shows clear prejudice resulting from an undue lack of constraint on the prosecution or undue constraint on the defense. Id.
¶ 26. “ ‘Hearsay’ is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” M.R.E. 801(c). Deputy Sis-trunk’s testimony was an out-of-court statement made not by Deputy Sistrunk but by “neighbors.” It is questionable as to whether the statement was made to prove the truth of the fact that Lewis was living in bars or to prove the truth of the fact that Deputy Sistrunk could not locate Lewis. Under either interpretation, nothing about Lewis being unbeatable or Lewis living in bars has any prejudicial effect upon Smith. Not only that, Smith does not present an argument for a prejudicial effect except for a brief mention in her reply brief that “[h]ad [she] been able to subpoena [Lewis], she might have had the option to present other evidence.” Smith blurs the lines between an error regarding the admission of evidence and some allegation for withholding evidence or some form of discovery violation. Smith never raised the issue of withholding evidence or discovery violations. In any event, because Smith experienced no prejudice from the testimony of which she complains, we will find no reversible error. E.g., Melton v. State, 723 So.2d 1156(¶ 23) (Miss.1998) (holding “[t]he jury would not have returned a different verdict had it not heard the hearsay testimony in issue; therefore, the error in admitting this testimony is insufficient to require reversal.”)
III. THE COURT ERRED IN FAILING TO GRANT APPELLANT’S MOTION FOR A DIRECTED VERDICT BECAUSE THE PROSECUTION FAILED TO PROVE THE IDENTITY OF THE PURCHASER OF THE CONTROLLED SUBSTANCE LAID IN THE INDICTMENT, AND THE INDICTMENT WAS INSUFFICIENT BECAUSE IT FAILED TO IDENTIFY THE PURCHASER OF THE CONTROLLED SUBSTANCE APPELLANT WAS CHARGED WITH SELLING.
¶ 27. In her final issue, Smith claims that the circuit court should have granted her motion for a directed verdict because the indictment alleged that she sold Darvo-cet to “Mississippi Bureau of Narcotics Informant # 224-2004.” Smith reasons that she was entitled to a directed verdict because the State only presented evidence that she sold Darvocet to Nolan and did not prove that “Mississippi Bureau of Narcotics Informant #224-2004” actually referred to Nolan.
¶ 28. The question of whether an indictment is fatally defective is a question of law. Jerninghan, 910 So.2d 748 at (¶ 1). We conduct a de novo review of questions of law. Id. This issue is a blended question of fact and law. In the context of the question regarding the circuit court’s decision on Smith’s motion for directed verdict, the issue is whether the evidence was sufficient to prove Smith sold Darvocet to Nolan. However, there exists a question of law as to whether a variance in the proof is fatal to an indictment where the indictment refers to a confidential informant as a coded number and the prosecution does not present evidence that the coded number actually refers to a particular confidential informant.
¶ 29. Pursuant to URCCC 7.06:
*482 The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them.
Our review of the record indicates that Smith’s motion for a directed verdict was insufficiently nonspecific. After the prosecution rested its case-in-chief, Smith’s attorney stated:
Your Honor, considering the evidence offered by the State of Mississippi in the light most favorable to the State of Mississippi, we move this Court to exclude that evidence and find that the State has wholly failed to meet its burden and to direct a verdict of not guilty for the defendant.
The circuit court then asked Smith’s attorney, “You want to be heard in argument?” Smith’s attorney responded, “No, your Honor.”
¶ 30. Smith never claimed that the circuit court should grant a directed verdict because of a variance between the proof and the indictment. One who enters a motion for a directed verdict on the grounds that the State has failed to make out a prima facie case must specifically state how the State failed to present a prima facie case. Jerninghan, 910 So.2d at 752(¶ 8). When a circuit court overrules an insufficiently specific motion for a directed verdict, we will not find that the circuit court erred. Id.
¶ 31. Procedural bar notwithstanding, this precise issue arose in Jerninghan.[2] In that case, this Court held that the State demonstrated that the confidential informant, identified by code only, was the same confidential informant identified by name at trial. The State proved that the named confidential informant was the coded confidential informant when the named confidential informant testified that he acted as a confidential informant and that he purchased narcotics from the defendant. The State also avoided any variance in the proof when it presented videotaped footage of the actual sale. Accordingly, the State “thoroughly demonstrated that [the confidential informant] purchased ... [narcotics] from [the defendant] while acting as a confidential informant ..., further establishing his identity” as the coded confidential informant referenced in the indictment. Id at (¶9).
¶ 32. Smith’s defense counsel failed to specify a variance in the indictment as grounds for the motion for directed verdict. Not only that, as in Jeminghan, the testimony at trial showed Nolan to be the confidential informant named in the indictment. Therefore, we find this issue to be without merit.
¶ 33. THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT OF CONVICTION OF SALE OF DEX-TROPROPOXYPHENE AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHO-BA COUNTY.
*483 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.

. According to Deputy Sistrunk's trial testimony, during a "pre-buy meeting,’’ "an informant and a[sic] agent or police officer ... arrange to meet at a ... specified location. At that location they discuss and make plans on how to purchase or information about illegal drugs or the whereabouts of illegal drugs.”

. Smith’s appellate counsel represented the appellant in Jeminghan in which this Court rejected this very argument.