# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00865-COA

**ELTON FRANKLIN**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/10/2019 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH BRIGGS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/24/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.**

**McDONALD, J., FOR THE COURT**:

¶1.     A Bolivar County Circuit Court jury convicted Elton Franklin of armed robbery. The circuit court sentenced Franklin to fifteen years in the custody of the Mississippi Department of Corrections, with five years suspended and ten years to serve, followed by five years of probation. He appeals, claiming that the overwhelming weight of the evidence proved he participated in the robbery under duress. After a review of the record, arguments of counsel, and relevant caselaw, we affirm Franklin's conviction and sentence.

**Facts**

¶2.     On September 15, 2016, Franklin and Antonio Brown robbed a Dollar General in East

Cleveland, Mississippi. According to the store's assistant manager, Lekeisha Ross, Franklin came into the store before the two robbed it. Shortly after he left, two masked men came in. Brown, the heavyset one, had a gun; the other person whom Ross identified as Franklin, was unarmed. Brown told Franklin to get the manager, Britney Foster, from the back. All of them walked to the front of the store, where Brown demanded that the women open the store's safe. Ross told Brown that the safe was on a timer and that it could not be opened, but they could have the money in the cash register. Brown told Franklin to get the money, and they both left with $183 that Franklin retrieved. Amanda Brewer had just pulled up to the store in her vehicle, and Brown attempted to get in it. Brewer locked the doors. Meanwhile, Franklin ran to the car he and Brown had driven. Brown abandoned his attempt to hijack Brewer's car and got in the car with Franklin. They headed toward Ruleville with Franklin at the wheel.

¶3.     Frank Michael, who was mowing the property next to the Dollar General, saw Brown and Franklin running out of the store. They took their masks off as they ran to a car that was parked on the side of the building. Michael got close enough to get the car's tag number before Brown and Franklin sped off. Michael went inside the store and found Ross and Foster still lying on the floor, upset and crying. They called the police and reported the robbery. When Cleveland Police Officer Michael Pointer arrived at the Dollar General, Frank Michael gave him a description of the get-away car, the tag number, and the direction that the robbers had headed.

¶4.     Officer Pointer alerted the Ruleville Police Department and relayed the information

2

concerning the get-away car. Ruleville Police Officer Dekota White spotted the vehicle and gave chase. After speeding through several streets in town, Franklin lost control of the car and crashed into a ditch beside a gravel road. Brown and Franklin were arrested. Officer White testified that initially Franklin gave him a false name. But White also testified that Franklin appeared to be shaken and scared. In the car, Officer White found money, a camouflage mask, and a magazine from a gun on the floor. White contacted the Cleveland Police Department, which took over investigation of the crime. Cleveland Police Investigator Joe Smith searched the car further and found a gun under the passenger seat. Franklin admitted to Cleveland Police Investigator Robert Graham that he was with Brown during the robbery but that Brown had threatened him into participating.

¶5. On March 30, 2017, a Bolivar County grand jury indicted Franklin and Brown for armed robbery of the Dollar General store in violation of Mississippi Code Annotated section 97-3-79 (Rev. 2014) and for attempted armed carjacking in violation of Mississippi Code Annotated section 97-3-117(2) (Rev. 2014). The State dropped the attempted carjacking charge against Franklin prior to trial. The circuit court severed the cases, and Franklin proceeded to trial on the armed robbery charge on May 9, 2019.

¶6. The State's witnesses included Officer Pointer, Michael, Ross, Officer White, and Investigators Graham and Smith. During Ross's testimony, the store surveillance video of the incident was played for the jury. Ross testified that even though Franklin was taking directions from Brown, she felt they were acting together because Franklin had come into the

store and spoken to her earlier.[1]  Ross said that if they were not acting together, Franklin could have warned them about Brown, and they could have locked the door.  But Franklin just spoke and left.  Ross identified Franklin in the courtroom as the individual who came in and spoke to her and as one of the robbers.

¶7.    After denying Franklin's motion for a directed verdict, Franklin re-called Robert Graham to clarify one statement Graham had made during the State's presentation.  Then Franklin took the stand and told the jury his version of events.  Franklin said that he had just met Brown two weeks earlier through his girlfriend.  On the day of the robbery, Brown asked him to ride around for a while.  When they got to the Dollar General, Brown told Franklin to go and see who was inside.  When Franklin came back to the car, Brown pulled out a gun, pointed it at Franklin, and gave him something to put on his head.  Franklin testified that he wanted to run, but there was nowhere to go.  So Franklin did as he was told.  After the robbery, Franklin said he ran back to Brown's car and got in on the driver's side.  Brown stopped at another vehicle and tried to get the driver to relinquish it.  But she refused to unlock her car doors.  Brown cocked the gun and pointed it at her.  When Brown saw that Franklin had run to the other car, Brown went after Franklin instead.

¶8.    Franklin testified that when the police started pursuing him, he wanted to stop, but Brown had the gun in Franklin's ribs and threatened to shoot him if he stopped.  Franklin said he purposely swerved the vehicle several times, and when Brown grabbed the wheel, they went into a ditch.  Brown told Franklin to step on the gas pedal, but the vehicle was

---

[1] The surveillance video did not contain this earlier visit by Franklin.

stuck. Brown even threw his foot over to the driver's side to try gunning the car himself, but he too was unsuccessful. Immediately, the police were upon them, and Brown got out of the vehicle. He said he was relieved that everything was over and that he was scared.

¶9. The circuit court instructed the jury on the elements of armed robbery and on the elements the State needed to prove to overcome Franklin's defense of duress.[2] After closing arguments, the jury deliberated for less than forty-five minutes and found Franklin guilty of armed robbery. The circuit court sentenced Franklin to serve as stated above. Thereafter Franklin filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial, which the circuit court denied.

¶10. Franklin appeals his conviction and sentence and raises as the sole issue whether the circuit court erred in denying his motion for a new trial, i.e., whether the overwhelming weight of the evidence supported his defense of duress.

### Standard of Review

¶11. We review the denial of a motion for a new trial for abuse of discretion, examining the evidence in the light most favorable to the verdict. *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017). The verdict will only be overturned when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *Id.* "We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Id.*

---

[2] Franklin raises no issue concerning the adequacy, wording, or appropriateness of the jury instructions given.

5

**Discussion**

¶12.    "Where a person reasonably believes that he is in danger of physical harm he may be excused for some conduct which ordinarily would be criminal." *Williams v. State*, 234 So. 3d 1278, 1285-86 (¶29) (Miss. 2017).  Duress is a valid defense to the crime of robbery. *Banyard v. State*, 47 So. 3d 676, 683 (¶19) (Miss. 2010).  Our supreme court established the components of duress in *Ruffin v. State*, 992 So. 2d 1165, 1177-78 (¶39) (Miss. 2008):

> (1) the defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) that he had not recklessly or negligently placed himself in the situation; (3) that he had no reasonable legal alternative to violating the law; (4) that a direct causal relationship may be reasonably anticipated between the criminal action and the avoidance of harm.

Even though duress is a defense raised by the defendant, he does not have the burden of proving it.  "The burden of proof never shifts to a defendant during a criminal trial; the prosecution always has the burden of proving the guilt of the accused beyond a reasonable doubt." *Banyard*, 47 So. 3d at 684 (¶22) (emphasis omitted).  "[The] accused never has the burden of satisfying the jury of his innocence, or to disprove facts necessary to establish the offense charged." *Id.*

¶13.    Here the jury was properly instructed on Franklin's defense of duress and that the burden was on the State to prove Franklin did not act while under duress.  Franklin argues that the evidence overwhelmingly proved duress and that the jury's verdict should be reversed.  Franklin points out that he never had a weapon as did the defendants claiming duress in cases raised by the State: *West v. State*, 765 So. 2d 872 (Miss. 1998), and *Ruffin v. State*, 992 So. 2d 1165 (Miss. 2008).  Moreover, Franklin's own version of events was the

same version he gave to Investigator Graham, and the arresting officer said he appeared shaken and scared. Franklin testified at trial that he was unaware of Brown's plan to rob the Dollar General until Brown pulled a gun on him.

¶14. But Michael's and Ross's testimonies countered Franklin's claims. Michael identified Franklin as one of the robbers running from the Dollar General. Specifically with respect to Franklin's claim of duress, Ross testified that to her it appeared Brown and Franklin were working together. She also pointed out that Franklin had come in the store and spoken to her before the robbery. She said if he was in fact being coerced by Brown, he could have warned them, and they would have locked the door and called the police. Moreover, after leaving the store, Brown stopped in an attempt to hijack another car. Franklin left Brown, ran to their car, and got in it. Franklin could have escaped at that time. The jury heard the testimony of all the witnesses, including Franklin. Ultimately, it is the jury who is the final arbiter charged with determining who to believe; "[w]here there is conflicting testimony, the jury is the judge of the credibility of the witnesses." *Newson v. State*, 773 So. 2d 981, 984 (¶14) (Miss. Ct. App. 2000).

¶15. In addition to the testimony presented, the jury was able to watch the robbery in real time as captured by the store's surveillance video. This type of evidence can be critical to the jury's determination of the credibility of the testimony it hears from the witnesses, as we noted in *Smith v. State*, 948 So. 2d 474, 479 (¶20) (Miss. Ct. App. 2007). There, the defendant contended that she sold prescription medication to a confidential informant because she feared her boyfriend who would have harmed her if she refused. *Id.* at 477

7

(¶11). We said that "Smith's explanation notwithstanding, at the very least, the videotaped surveillance footage creates a jury question as to whether Smith reasonably believed she was under imminent threat of physical harm at the moment Smith sold Nolan prescription medication." *Id*. at 479 (¶20). We further pointed out, citing *Brown v. State,* 252 So. 2d 885 (Miss. 1971), that

> in the final analysis the most that can be said relative to the appellant's testimony as to duress is that it presented a question for the jury to determine. That is, the supreme court found that circumstantial evidence in the form of the appellant's behavior contradicted the appellant's claim of duress. Accordingly, the supreme court held that, under such circumstances, a jury question existed as to whether the accused affirmatively demonstrated duress. What is more, the supreme court held that, when such a jury question exists, a guilty verdict is not against the overwhelming weight of the evidence.

*Smith*, 948 So. 2d at 479 (¶17) (citations and internal quotation marks omitted).

¶16. Similarly in this case, there was conflicting evidence on the issue of Franklin's claim of duress that created a question for the jury. Given the proof presented, we cannot say that the jury's verdict was against the overwhelming weight of the evidence.

## Conclusion

¶17. Franklin's claim of duress was a question for the jury to decide. Because the jury's verdict was not against the overwhelming weight of the evidence, we affirm Franklin's conviction and sentence.

¶18. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR.**